AO 106 (Rev. 01/09) Application for a Search Warrant

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

JUN 2 4 2021

JAMIE GIANI, Clerk
By _____ Deputy Clerk

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Information Associated with APPLE account: )
JOSHUADUGGAR@ICLOUD.COM controlled by )
APPLE, INC. )

Case No. 5:21cm 47

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Western___ District of ___Arkansas___ *(identify the person or describe property to be searched and give its location)*: See "Attachment A"
This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711 (3)(A) and Federal Rule of Criminal Procedure 41

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See "Attachment B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___2252/2252A___, and the application is based on these facts: Reciept and Possession of Child Pornography---See "Attachment C"

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

HOWARD AYCOCK, SA HSI
Printed name and title

Sworn to before me and signed in my presence.

Date: 6/24/2021

_____
Judge's signature

City and state: Fayetteville, Arkansas

Christy Comstock US Magistrate Judge
Printed name and title

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with JOSHUADUGGAR@ICLOUD.COM (the "account") that is stored at premises owned, maintained, controlled, or operated by:

Apple Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cuptertino, CA 95014, covering the time period of **May 11, 2019 until and including May 16, 2019**.

## ATTACHMENT B

**Particular Things to be Seized**

**I.     Information to be disclosed by Apple**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, including any messages, records, files, logs, or information that has been deleted but are still available to Apple, or have been preserved pursuant to any request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, any password connected to the account, the methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.     All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.     The contents of all emails associated with the account JOSHUADUGGAR@ICLOUD.COM, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails) during the timeframe identified in Attachment A, the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.     The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages) during the time frame identified in Attachment A, the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.     The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWorks (including Pages, Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

  f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), messaging logs (including iMessage, SMS, and MMS messages), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find my iPhone logs, logs associated with iOS device activation and upgrades, and logs associated with web-based access of Apple services (including all associated identifiers) covering the time period set out in Attachment A;

  g. All records and information regarding locations where the account was accessed, including all data stored in connection with Location Services for the time period set out in Attachment A;

  h. All records pertaining to the types of service used during the time period set out in Attachment A; and

  i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken during the time frame set out in Attachment A.

## II.   Information to be seized by the government

All information described above in Section I, including correspondence, records, documents, photographs, videos, applications, communications, and electronic messages, passwords, or IP logs that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2252, and 2252A including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.   The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s) and the passwords listed on the account.

b.   Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber during the time frame set out in Attachment A;

c.   Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

d.   Evidence indicating the subscriber's state of mind as it relates to the crime under investigation, including internet searches for relevant programs or information;

e.   Evidence that may identify potential witnesses for the above-listed crimes,

Including call logs, messages, pictures, and emails, establishing a time frame and that help reveal their whereabouts;

f.   Records, documents, and image files taken with an apple device during the timeframe identified in Attachment A, which likewise corroborate the location of the device,

including but not limited to any and all IP address logs and geolocation services and information available.

      g.     Any and all applications implicated in the offenses set out herein, including but not limited to, TOR, BitTorrent or uTorrent or other applications relevant to the investigation such as Covenant Eyes.

ATTACHMENT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVSION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: ) ) ) INFORMATION ASSOCIATED WITH APPLE ACCOUNT OF: JOSHUADUGGAR@ICLOUD.COM THAT IS STORED AT PREMISES CONTROLLED BY APPLE, INC. ) ) ) ) ) ) | No. |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, HOWARD AYCOCK, being duly sworn, depose, and state the following:

1. I am a Special Agent with the Department of Homeland Security ("DHS"), Homeland Security Investigations (HSI), currently assigned to the Assistant Special Agent in Charge in Fayetteville, Arkansas. I have been so employed with HSI since April of 2015. I have completed the Criminal Investigator Training Program and HSI Special Agent training at the Federal Law Enforcement Training Center in Brunswick, Georgia. As part of my daily duties as an HSI Special Agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have been the affiant in numerous search warrants, and I have also participated in the execution of numerous search warrants, many of which involved child exploitation and/or child pornography offenses.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple") to disclose to the government records and other information, including the contents of communications, associated with the Apple ID JOSHUADUGGAR@ICLOUD.COM that is stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cuptertino, CA. The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A and B.

4. For the reasons stated below, there is probable cause to believe that the information described in Attachment A contains evidence, fruits and instrumentalities of violations of the following federal statutes: (1) Title 18, U.S.C. § 2252 (possession, receipt, and distribution of child pornography) and (2) Title 18 U.S.C. § 2252A (possession, receipt and distribution of child pornography), as described in Attachment B.

5. The statements in this affidavit are based in part on information provided by HSI Special Agents, other law enforcement officers, and on my experience and background as a Special Agent. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## STATUTORY AUTHORITY

6. 18 U.S.C. § 2252 prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

7. 18 U.S.C. § 2252A prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. §2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

## DEFINITIONS

8. The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

9. The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

10. The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

11. The term "computer," as defined in 18 U.S.C. §1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or

communications facility directly related to or operating in conjunction with such device.

12. The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct

13. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

14. "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

15. "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies a particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

16. "Domain names" are common, easy to remember names associated with an IP address. For example, a domain name of "www.usdoj.gov" refers to the IP address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period.

17. "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

## INFORMATION REGARDING APPLE DEVICES AND ICLOUD[1]

18. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

19. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage.

20. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

21. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

---

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "iCloud: iCloud storage and backup overview," available at https://support.apple.com/kb/PH12519; and "iOS Security," available at http://images.apple.com/privacy/docs/iOS_Security_Guide.pdf.

22. iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services and can also be used to store iOS device backups and data associated with third-party apps.

23. iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs enables iCloud to be used to synchronize webpages opened in the Safari web browsers on all the user's Apple devices. iWorks Apps, a suite of productivity apps (Pages, Numbers, and Keynote), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

24. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

25. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.

26. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

27. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either

Microsoft Windows or Mac OS.

28. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services, which are accessible from both Apple devices and laptop and desktop computers. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

29. An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

30. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

31. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App

Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

32. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

33. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWorks and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service

("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud.

## DETAILS OF INVESTIGATION

34. In May of 2019, the Arkansas Internet Crimes Against Children (ICAC) Task Force initiated an investigation targeting offenders sending and receiving child pornography online via the BitTorrent Peer-to-Peer (P2P) file sharing network. During the course of this investigation, law enforcement detected a computer utilizing IP Address 167.224.196.113 offering known files of child pornography available for download. On May 14, 2019 and again on May 15, 2019, a direct connection was made between the ICAC officers' investigative computer and the target computer. Thereafter, the ICAC officer successfully downloaded multiple files of child pornography as defined by federal law from the target computer. Specifically, the downloaded files included a video file entitled "mov_0216.mp4," which depicted a two 7 to 9-year-old females being sexually abused by an adult male. Law enforcement also downloaded one (1) zip file entitled "marissa.zip" which contained approximately sixty-five (65) individual image files. The images overall depict a prepubescent female undressing, posing lasciviously, and exposing her vagina to the camera. A subsequent investigation revealed the computer utilizing the target IP address from which the images of child pornography were downloaded was assigned to and utilized by Wholesale Motorcars of Springdale, Arkansas, which is located within the Western District of Arkansas. The investigation also revealed the account holder on the internet service provider agreement to be the defendant, Joshua DUGGAR.

35. On November 8, 2019, the Homeland Security ICAC Task Force executed a

federal search warrant on the premises of Wholesale Motorcars located at on Wildcat Creek Road in Springdale, Arkansas. While on scene, Special Agents Gerald Faulkner and Howard Aycock encountered Joshua DUGGAR. During a post- *Miranda* statement, DUGGAR informed Agents there was a password protected HP computer located in the main business office of Wholesale Motorcars. DUGGAR stated he had owned the computer for approximately two or three years. DUGGAR also told the Agents that he was familiar with file sharing programs. He likewise stated that he was aware that TOR was on the HP computer and that peer to peer programs were possibly on his personal Apple iPhone and Apple MacBook. DUGGAR also identified his email address as JOSHUADUGGAR@ICLOUD.COM.

36. Pursuant to the federal search warrant multiple electronic devices were seized and forensically examined, including the HP desktop computer located in the main office building and DUGGAR's personal iPhone and MacBook. Forensic examination of the HP desktop computer revealed that it contained a password protected Ubuntu Linux partition, which was installed on May 11, 2019. A partition enables a user to split his hard drive into multiple sections that act independently. Forensic examiners determined that the password to the Linux partition installed on the HP computer was "Intel1988." The last four digits of the password correspond to DUGGAR's birth year. The forensic examination further revealed that on May 13, 2019, the Onion Router, commonly referred to as TOR, was installed on the Linux partition portion of HP computer. TOR is a web browser that can be downloaded from the internet in order to view and access what is commonly called the dark web. Forensic analysts determined that after the TOR browser was installed on the HP computer, it was then utilized to download images of child pornography. The forensic examination also revealed the Bit-Torrent file sharing program was installed on the Linux partition area of the HP computer on May 14, 2019. Further examination

revealed that the Bit-torrent program was thereafter utilized to download images of child pornography on May 14th, 15th, and 16th of 2019. Of note, the forensic analyst determined that the file "marrisa.zip" was downloaded via the Bit-torrent program on or about May 15, 2019. Lastly, analyst located a commercially available internet monitoring software, entitled Covenant Eyes, on the HP Computer. Records obtained from Covenant Eyes revealed that the account was registered to DUGGAR and his wife.

37. A forensic review of DUGGAR's Apple MacBook revealed that DUGGAR has been backing up or syncing his iPhone to his MacBook, so that text or iMessage's and photos created or received during May of 2019 were located on the device. Of note, the forensic examination of the MacBook revealed that DUGGAR utilizes the Apple ID of JOSHUADUGGAR@ICLOUD.COM. Per further forensic review, on May 15, 2019, DUGGAR sent a text message or iMessage at 11:15A.M., stating "Im at my car lot now." During the afternoon hours, forensics revealed that DUGGAR's iPhone was utilized to take digital pictures of various vehicles on the car lot. These digital pictures contained geolocation information further reflecting that the images were taken at or near the car lot. At 5:58 P.M., DUGGAR sent a text message stating "still have customers here." Of significance, a digital picture was taken by DUGGAR'S iPhone inside the car lot's main building that contained the HP computer at approximately 6:51PM, which is 6 minutes after the ICAC officer downloaded "marissa.zip." A further review of the MacBook revealed that the uTorrent application, which is the specific BitTorrent client at issue, was downloaded on the MacBook computer.

38. Based on the evidence in this investigation, your Affiant has probable cause to believe that stored messages, emails, photos, contacts, and other information may be stored in the iCloud connected to DUGGAR's Apple ID JOSHUADUGGAR@ICLOUD.COM, including

information that would tend to establish that DUGGAR was in close proximity to or using the HP computer on the dates and times of the offense set out herein. For example, the fact that DUGGAR sent work related emails and/or iMessage's while connected to the IP address at issue directly places DUGGAR at the car lot during the timeframe at issue. Additionally, the use of apps downloaded from App Store and iTunes Store would reveal additional services used in furtherance of the crimes under investigation, including TOR, uTorrent, BitTorrent, or other file sharing apps used by DUGGAR to obtain child pornography. For all of these reasons, Apple's servers are likely to contain stored electronic communications and information concerning its subscriber and his use of Apple's services and contain evidence of the child pornography crimes under investigation.

### **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

39.  I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### **CONCLUSION**

40.  Based on the forgoing, I request that the Court issue the proposed search warrant.

41.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has

jurisdiction over the offense being investigated."

42. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

HOWARD AYCOCK
Special Agent
Homeland Security Investigations

Sworn and subscribed before me

This 24th day of June 2021

Honorable Christy Comstock
United States Magistrate Judge